UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
NATASHA DESSELLE,

                        Plaintiff,

          -against-

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
-------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**

(CORRECTED)
**DECISION AND ORDER**

20 Civ. 9876 (PED)

      Plaintiff Natasha Desselle brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final determination of the Commissioner of Social Security (the

"Commissioner") denying plaintiff's application for disability insurance benefits.  On July 27,

2021, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).

Dkt. #17.

      Presently before this Court are the parties' cross-motions for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #18 (plaintiff's motion), #19

(plaintiff's memorandum of law), #20 (defendant's cross-motion), #21 (defendant's

memorandum of law) and #22 (plaintiff's reply)).  Plaintiff argues, as the basis for her motion,

that the Commissioner's determination of plaintiff's mental residual functional capacity

("MRFC") is the product of legal error (for failure to develop the record) and is not supported by

substantial evidence.  Dkt. #19, at 10-17.[1]  Defendant asserts, in response, that the Administrative

Law Judge ("ALJ") applied the correct legal standards and that substantial evidence supports the

---

[1] Citations to specific page numbers reflect document (and not ECF) pagination.

ALJ's decision.  Dkt. #21, at 13-22.  For the reasons set forth below, plaintiff's motion is **GRANTED** and defendant's motion is **DENIED**.

## I. PROCEDURAL BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration, filed by defendant on June 2, 2021 (Dkt. #14).

On July 15, 2016, plaintiff filed an application for disability benefits alleging disability as of October 30, 2014.  R. 10-11, 78-79.  The application was administratively denied on September 16, 2016, and became administratively final when plaintiff did not timely appeal.  R. 10.

On January 9, 2018, plaintiff filed another application for disability benefits, again alleging that she had been disabled since October 30, 2014.  R. 10.  On or about April 13, 2018, plaintiff was notified that her claim had been administratively denied.  R. 92-102.  She requested a hearing before an ALJ; a hearing was held on October 10, 2019 before ALJ Helen Valkavich. R. 33-76.  Plaintiff appeared with counsel and testified at the hearing.  R. 41-62.[2]  On November 22, 2019, the ALJ issued a written decision in which she concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA") from September 17, 2016, the day after the prior administratively filed decision, through December 31, 2018, the date she was last insured for disability benefits.  R. 10-22.[3]  The ALJ's decision became the final order of the

---

[2]  Vocational expert Claire Ziegler also testified at the hearing.  R. 62-73.

[3]  Because plaintiff reasserted an onset date of October 30, 2014, the ALJ construed plaintiff's application as a request to reopen the prior determination, and declined to do so for lack of good cause.  R. 10-11.  Plaintiff does not challenge the ALJ's refusal to reopen her prior application.

Commissioner on September 22, 2020, when the Appeals Council denied plaintiff's request for review. R. 1-3. This action followed.

## II. LEGAL STANDARDS

A. Standard of Review

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to "'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)).

The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard." *Brault v. Soc. Sec. Admin*, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence,

the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.'" *Velez v. Colvin*, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5, 2017) (quoting *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)). Thus, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B. Statutory Disability

A claimant is disabled under the Social Security Act ("the SSA") when he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, a person is eligible for disability benefits under the SSA only if

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security Regulations set forth a five-step sequential analysis for evaluating whether a person is disabled under the SSA:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

(3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;

(4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre*, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).[4]  The claimant bears the burden of proof as to the first four steps of the process. *See Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008).  If the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth and final step. *See Brault*, 683 F.3d at 445.

Additionally, where a claimant suffers from an alleged mental impairment, the ALJ is

---

[4] In the event that the regulations and Social Security Rulings cited herein were amended subsequent to the ALJ's decision, I discuss (and have applied) the relevant regulations/rulings as they existed at the time of the ALJ's decision.

required to utilize a "special technique" at the second and third steps. *See Kohler v. Astrue*, 546

F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a, 416.920a. At step two, in

determining whether the claimant has a "severe impairment," the ALJ must rate the claimant's

degree of functional limitation in four areas: (1) understanding, remembering, or applying

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and

(4) adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the

claimant's mental impairment or combination of impairments is severe, then at step three the

ALJ must "compare the relevant medical findings and the functional limitation ratings to the

criteria of listed mental disorders in order to determine whether the impairment meets or is

equivalent in severity to any listed mental disorder." *Kohler*, 546 F.3d at 266 (citing 20 C.F.R. §

404.1520a(d)(2)). *See also* 20 C.F.R. § 416.920a(d)(2). If the claimant suffers from a severe

impairment which is not listed (or equivalent in severity to a listed mental disorder), then the

ALJ must assess the claimant's residual functional capacity ("RFC"). *See Kohler*, 546 F.3d at

266 (citing § 404.1520a(d)(3)). *See also* 20 C.F.R. § 416.920a(d)(3).

### III.  THE ALJ'S DECISION

To assess plaintiff's disability claim, the ALJ followed the five-step sequential analysis

and applied the "special technique" at steps two and three. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

(v), 404.1520a and discussion, *supra*. At step one, the ALJ concluded that plaintiff had not

engaged in substantial gainful activity during the relevant period (from September 17, 2016

through December 31, 2018). R. 13. At step two, the ALJ concluded that plaintiff had the

following severe impairments during the relevant period: degenerative disc disease in the cervical

and lumbar spine; degenerative joint disease in the bilateral knees; status-post arthroscopy left

knee; status-post ORIF left ankle; status-post arthroscopy right shoulder; carpal tunnel syndrome; diabetes with neuropathy; obesity; depression; and anxiety.  *Id.*[5]

At step three, the ALJ determined that plaintiff's impairments (individually or combined) do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 13-15.  In particular, the ALJ found that plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 or 12.06.  R. 14.[6]  In making this finding, the ALJ first considered whether the "paragraph B" criteria are satisfied.  R. 14-15.  "To satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning."  R. 14.  The ALJ found that plaintiff had: no limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself.  R. 15.  Thus, the ALJ concluded that the "paragraph B" criteria were not satisfied.  *Id.*  The ALJ also considered whether the "paragraph C" criteria were satisfied, and concluded that the record evidence failed to establish the presence of the "paragraph C" criteria.  *Id.*  Finally, the ALJ noted that the limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, whereas the MRFC assessment used at steps 4 and 5 "requires a

---

[5] The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed.  I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as germane to the analysis set forth below.

[6] Listing 12.04 is the listing for "depressive, bipolar and related disorders."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Listing 12.06 is the listing for "anxiety and obsessive-compulsive disorders."  *See id.*, § 12.06.

more detailed assessment of the areas of mental functioning." *Id.* Accordingly, the ALJ noted

that her RFC assessment "reflects the degree of limitation [I have] found in the 'paragraph B'

mental function analysis." *Id.*

> Next, the ALJ assessed plaintiff's RFC as follows:

> > After careful consideration of the entire record, the undersigned finds that,
> > through the date last insured, the claimant had the residual functional capacity to
> > perform sedentary work as defined in 20 CFR 404.1567(a) except:
> > • Can lift and carry, as well as push and pull 10 pounds occasionally and
> > less than 10 pounds frequently.
> > • Sit 6 hours, stand 2 hours, walk 2 hours in an eight-hour workday.  Can
> > use cane to assist with ambulation, and can carry objects in free hand or in
> > container with a handls.
> > • Limited to occasional overhead reaching with both the left and right arm.
> > Limited to frequent but not continuous handling and fingering with both hands.
> > • Never climb ladders, ropes and scaffolds, kneel or crawl.  Occasionally
> > climb ramps and stairs, balance, stoop and crouch.
> > • Never work at unprotected heights.  Occasionally operate a motor
> > vehicle.
> > • Pace of work is determined by the person, but general production
> > demands are met.

R. 16.  In reaching this conclusion, the ALJ considered "all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence

and other evidence" and "medical opinion(s) and prior administrative medical finding(s)" in

accordance with 20 C.F.R. §§ 404.1520c and 404.1529 and Social Security Ruling 16-3p. *Id.*.

> In particular, the ALJ addressed plaintiff's mental impairments as follows:

> [T]he undersigned considers the claimant's allegations of mental impairments,
> which were not alleged on the claimant's initial Adult Disability Report.
> Regardless, January 2018 treatment notes document the claimant's reports of
> increased "twilightness" behavior and staring out windows resulting in a diagnosis
> of depression anxiety thought to be triggered by the claimant's recent relocation to
> the Bronx.  Nevertheless, her mental status examination was unremarkable as the
> claimant displayed normal attention and concentration.  She was treated
> conservatively with medication.  However, her symptoms persisted despite

prescribed medication.  The claimant displayed decreased concentration along with nervous and anxious behavior at a May 2018 follow-up appointment.  She noted some improvement in symptoms with a medication switch to Celexa but still reported trouble sleeping and excessive worrying.  As such, the undersigned has limited the claimant to work where the pace of the work is determined by the person but general productions demands met.  However, further mental limitations are not necessary as the claimant testified to living independently with her two sons, ages 10 and 16.  While she reported social isolation tendencies at the hearing, the claimant did not allege problems getting along with others on her function report and instead noted she spent time conversing with her children daily and attended church with others on a weekly basis.  She also admitted that she was capable of following written and spoken instructions but that stressful situations impacted her functioning.

R. 18-19 (internal citations to record omitted).  Further, the ALJ noted:

> In April 2018, Angelina Romeo, LCSW issued a statement that the claimant cannot work due to symptoms of anxiety and depression.  Kenneth Schaefle, M.D. issued a similar statement in May 2018.  The persuasiveness of these statements have not been addressed as a claimant's ability to work is an issue reserved for the Commissioner.

R. 20 (internal citation to record omitted).

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work through the date last insured.  R. 20-21.  At step five, based upon the vocational expert's testimony (and considering plaintiff's age, education, work experience and RFC), the ALJ concluded that plaintiff, through the date last insured, "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  R. 22. Thus, the ALJ found plaintiff "not disabled" (as defined in the SSA) during the relevant period. *Id.*

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by failing to develop the record regarding plaintiff's mental impairments.  It is well-settled that the ALJ has an affirmative obligation to develop the

record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The duty arises from SSA regulations, which require the ALJ to develop a claimant's "complete medical history" for at least twelve months prior to the month in which the claimant filed an application for benefits or, if the claimant says the disability began less than twelve months prior to filing, beginning with the month the disability allegedly began (absent reason to believe it began earlier). *See* 20 C.F.R. §§ 404.1512(b)(1)(ii), 416.912(b)(1)(ii). "Courts hold that where, as here, psychiatric impairments are at issue, an ALJ has a heightened duty to develop the record due to the difficulties associated with evaluating a mental illness' impact on a claimant's ability to function adequately in a workplace." *Munnings-Bah v. Saul*, No. 19 Civ. 3510, 2020 WL 5755065, at *12 (S.D.N.Y. Sept. 14, 2020), *report and recommendation adopted sub nom.*, 2020 WL 5880182 (S.D.N.Y. Oct. 2, 2020). Moreover, "the ALJ's general duty to develop the administrative record applies even where the applicant is represented by counsel, but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014 (citation omitted).

Here, plaintiff asserts that the ALJ rejected the only medical opinions addressing plaintiff's mental limitations and, thus, "the ALJ should have either contacted [p]laintiff's treating physicians or in the alternative ordered a consultative examination." Dkt. #19, at 11. Plaintiff's argument, narrowly construed, is unpersuasive: "An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion." *Jonathan S. v. Comm'r of Soc. Sec.*, No. 20 Civ. 1177, 2022 WL 44700, at *7 (W.D.N.Y. Jan. 5, 2022). Construing plaintiff's argument more broadly, however, compels a different conclusion.

The duty to develop the record requires the ALJ "to ensure that the record contains

sufficient evidence to make a determination." *See Johnson v. Comm'r of Soc. Sec.*, No. 17 Civ.

5598, 2018 WL 3650162, at *13 (S.D.N.Y. July 31, 2018) (quotation marks and citation

omitted).  Thus, "an ALJ's failure to request medical source opinions is not *per se* a basis for

remand where 'the record contains sufficient evidence from which an ALJ can assess the

petitioner's [RFC].'" *Greenhaus v. Berryhill*, No. 16 Civ. 10035, 2018 WL 1626347, at *9

(S.D.N.Y. Mar. 30, 2018) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir.

2013)).  *See Monroe v. Commissioner*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (reaffirming principle

that a medical source statement or formal medical opinion is not necessarily required where the

record contains sufficient evidence from which an ALJ can assess the claimant's residual

functional capacity); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015)

(absence of medical source statement from a claimant's treating physician is not always fatal to

the ALJ's determination).  The need for a treating physician's medical source statement hinges

"on circumstances of the particular case, the comprehensiveness of the administrative record,

and, at core, whether an ALJ could reach an informed decision based on the record." *Sanchez v.

Colvin*, No. 13 Civ. 6303, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015).

Here, the record indicates that plaintiff underwent therapy in 2018 for treatment of her

mental impairments at Montefiore Medical Group (R. 1151, 1163-64, 1183, 1202, 1217, 1255,

1278, 1280) and at "Jewish Home" (R. 1238).  Yet, the record contains no treatment notes from

any therapy sessions.  Thus, an "obvious gap" in the administrative record precluded the ALJ

from reaching an informed decision regarding plaintiff's MRFC.  "Because the ALJ's duty to

develop the record on behalf of a claimant is a threshold duty, remand is appropriate when the

ALJ fails to discharge this duty." *Jackson v. Kijakazi*, No. 20 Civ. 7476, 2022 WL 620046, at

*17 (S.D.N.Y. Mar. 3, 2022) (quotation marks and citation omitted).

Accordingly, this case is remanded for further development of the record regarding any treatment notes from plaintiff's 2018 therapy sessions. Following review of any such records, the ALJ should reconsider whether the record contains sufficient evidence from which she can assess plaintiff's MRFC, or whether it is necessary to obtain an opinion (or opinions) as to plaintiff's mental functional limitations from treating sources and/or a consultative psychiatric examiner.[7]

## V.  CONCLUSION

For the reasons set forth above, the Commissioner's motion is **DENIED** and plaintiff's motion is **GRANTED**. This case is **REMANDED** for further administrative proceedings consistent with this Decision and Order, pursuant to 42 U.S.C. § 405(g), sentence four.

The Clerk of the Court is directed to terminate the pending motions (Dkt. #18, #20) and close this case.

Dated:  June ____, 2022
       White Plains, New York

SO ORDERED.

PAUL E. DAVISON, U.S.M.J.

---

[7] Because I have determined that remand is necessary for development of the record, I decline to address plaintiff's substantial evidence argument. *See Miraglia v. Comm'r of Soc. Sec.*, No. 20 Civ. 1964, 2022 WL 1556409, at *4 (E.D.N.Y. May 17, 2022).